Danny CARTY, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–1280A356.

Court of Appeals of Indiana,
First District.

June 23, 1981.

Harriette Bailey Conn, Public Defender of Indiana, Kurt A. Young, Deputy Public Defender, Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Frederick N. Kopec, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Defendant-appellant Danny Carty (Carty) was convicted by a jury of Battery, a Class D felony under Ind.Code 35–42–2–1(2) (Supp.1979). The grade of the offense was enhanced because the battery was inflicted upon a law enforcement officer. Carty was sentenced to a term of two years imprisonment and he appeals.

We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to the State discloses the following: In response to a disturbance call, Clinton Police Officers Hines, Jackson, Stateler, Hallwell, and Special Deputy Sheriff Pupilli assembled at a trailer site in Clinton, Indiana. Carty, who became the focal point of their interest, was ultimately arrested for disorderly conduct and handcuffed. The officers attempted to place Carty in a patrol car for transport to the jail, but Carty, recalcitrant, resisted and fought the officers. Special Deputy Sheriff Mark Pupilli, while holding Carty's leg, was struck in the face by one of Carty's flailing feet as he struggled and kicked to prevent being loaded in the patrol car. The blow received by Pupilli caused intense pain, swelling, discoloration about the face, and a chipped tooth. The kick resulted in the battery charge which is the subject of this appeal.

## ISSUES

We restate the errors assigned by Carty as follows:

I. Whether the evidence was sufficient to sustain the conviction since the victim did not suffer a "bodily injury" within the meaning of Ind. Code 35–41–1–2;

II. Whether the evidence was sufficient to sustain the conviction since Special Deputy Pupilli was not a law enforcement officer;

III. Whether the trial court invaded the province of the jury as judge of the law and the facts by stating in front of the venire that the Defendant had committed a battery and had resisted law enforcement, such comment serving to inflame and prejudice the prospective jurors so that Carty could not have had a fair trial; and

IV. Whether the evidence was sufficient to sustain the conviction in that the State failed to prove that Carty knowingly or intentionally kicked Deputy Pupilli.

## DISCUSSION AND DECISION

### Issue I. Bodily injury

██ Carty argues that the injuries suffered by Deputy Pupilli were insufficient under Ind.Code 35–42–2–1(2) to prove a Class D felony. That section provides that a battery of a police officer which results in bodily injury raises the offense to a Class D felony. Ind.Code 35–41–1–2 (Supp.1979) defines "bodily injury" as any impairment of physical condition, including physical pain.

The ruling in *Hanic v. State*, (1980) Ind. App., 406 N.E.2d 335, is dispositive of this issue. There, the injury consisted of red marks and bruises on the prosecutrix's arms, and minor scratches on her breast area. She was knocked down several times, choked, and had her arms twisted. The court, upon acknowledging that bodily injury includes any physical impairment and physical pain, held the above-recited injuries sufficient to sustain a conviction under Ind.Code 35–42–2–1(1).

This court will not reweigh the evidence but will look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Hanic, supra.* We conclude that the evidence here is sufficient for the jury to have found bodily injury.

### Issue II. Victim a law enforcement officer

Deputy Sheriff Pupilli testified that he had been sworn in as a special deputy sheriff under appointment by the Sheriff. He was not compensated for his services, and had volunteered his time. He attended training classes conducted by the Sheriff's department and the prosecuting attorney. He worked two shifts a month, eight or nine hours each, wore a uniform and was given a car marked with the sheriff's insignia. He patrolled alone and with other officers, and cooperated with other police departments. During direct examination of Pupilli, counsel for Carty volunteered the following stipulation:

"Your honor, at this time we will stipulate that Mr. Pupilli has been well trained and [is a] competent special deputy. We are not going to question his qualifications in any way."

The prosecuting attorney agreed to the stipulation and it was so stipulated. Examination in that area ceased.

Now Carty contends that the Vermillion County Sheriff did not have authority to appoint special deputies for general law enforcement purposes. Pupilli, he then argues, was not a law enforcement officer within the meaning of Ind.Code 35–41–1–2 which would enhance the battery to a Class D felony pursuant to Ind.Code 35–42–2–1(2). While we are of the opinion that the above-recited stipulation forecloses Carty's right to challenge Pupilli's status, we are aware of the widespread use of volunteer, uncompensated special deputies by the sheriffs of the State, and deem it useful to address the issue.

Under Ind.Code 35–42–2–1(2) a battery resulting in bodily injury upon a "law enforcement officer" engaged in the execution of his duties enhances the offense to a Class D felony. Under Ind.Code 35–41–1–2 a "law enforcement officer" is defined, among other things, as a sheriff or his deputy. Carty argues that there is no specific legislative authority to appoint such a deputy as Pupilli, and therefore, the appointment did not establish Pupilli as a law enforcement officer for purposes of Ind. Code 35–42–2–1. He erroneously cites Ind. Code 5–2–1–2 as sole authority to sustain his position. That section is part of an Act of 1967, chapter 209, which creates a mandatory training program for "all law enforcement officers," but specifically excludes from the definition of law enforcement officers "constables and special officers including those receiving only token payment for their services." Because that definition was specifically limited to the mandatory training program, it is not applicable here.

Sheriffs have the power to appoint deputies, full-time, part-time or as needed for a variety of situations.[1]

Ind.Code 17–3–14–2 (Supp.1979) *et seq.* creates a sheriff's merit board, and Ind.Code 17–3–14–6 specifically describes the hiring procedure for deputies and other personnel. Other statutes give the Board of County Commissioners and the County Council budgetary control over the number and salary of deputies employed.[2] Ind.Code 19–1–11–2 requires the county to furnish uniforms to "full-time paid deputies;" and Ind. Code 5–2–1–2 excludes special deputies from the mandatory training program. In 1965 Op.Ind.Att'y Gen. No. 44, the Attorney General, in an analysis of the statutes, concluded that sheriffs could appoint special part-time non-salaried deputies. However, we are of the opinion that the existence of a de jure deputy is not essential for conviction under Ind.Code 35–42–2–1(2).

---

1. *See* Ind.Code 5–6–1–1; Ind.Code 17–3–71–2; Ind.Code 17–3–6–1; and Ind.Code 17–3–5–4.

2. *See* Ind.Code 17–3–71–2; Ind.Code 17–3–6–1; Ind.Code 17–1–24–18.1; Ind.Code 17–3–14–3.

One who holds office under the color of an election or an appointment and discharges the purported duties of office in full view of the public without being an intruder or usurper, is at least a de facto official. The authority of a de facto official cannot be collaterally attacked. The validity of a de facto officer's acts may only be challenged directly against the individual who purports to hold the office. For the protection of the public who deal with him, the acts of a de facto officer are as valid as the acts of a de jure officer. *Platte v. Dortch*, (1970) 255 Ind. 157, 263 N.E.2d 266; *Fruit v. Metropolitan School District of Winchester-White River Township*, (1961) 241 Ind. 621, 172 N.E.2d 864. All that is required to make an officer de facto is: that he claim the office, be in possession of it, and perform its duties under the color of election or appointment. *Rule v. State Ex Rel. Dickinson*, (1935) 207 Ind. 546, 194 N.E. 151. If their election or appointment were valid they (de facto officers) would be de jure officers. *Rule, supra; McGuirk v. State Ex Rel. Gottschalk*, (1930) 201 Ind. 650, 169 N.E. 521. A person whose election is irregular and void because he is ineligible is nevertheless an officer, de facto, if he discharges the duties of his office under the color of an election. *McGuirk, supra.*

In the companion cases of *State v. Duncan*, (1899) 153 Ind. 318, 54 N.E. 1066, and *State v. Ray*, (1899) 153 Ind. 334, 54 N.E. 1067, the principles of de facto officers were applied to a situation similar to the case at bar. In *Ray, supra*, defendants were charged with conspiracy to bribe Duncan, an engineer appointed under an appropriate statute to supervise a gravel road construction. The defense was raised that because of a lack of residence and other technical infirmities the appointment was invalid, and Duncan was not a public officer. Therefore, the charge of bribing a public official could not stand. The court held that Duncan was a de facto officer and the parties were not permitted to raise the question of whether or not he was a de jure officer. Whether Duncan was a de jure officer *or* a de facto officer, the parties would be guilty of bribing him.

More pertinent to the case at bar is 6A C.J.S. *Assault and Battery* § 81, which recites the following:

> "An assault on a de facto officer to prevent an arrest is an aggravated assault the same as if the officer were de jure."

*See also State v. Bryant*, (1928) 174 Minn. 565, 219 N.W. 877.

In conclusion, we hold that statutory authority exists for the appointment of deputies by a sheriff or the merit board. If a deputy is performing duties under the color of appointment to the office, he is a de facto officer although some infirmities may exist which prevent the appointment from being valid. As a de facto officer he is a "law enforcement officer" for purposes of Ind.Code 35–42–2–1; and any battery upon him causing bodily injury increases the offense to a Class D felony. We further hold where an officer is a de facto officer, that fact may not be challenged collaterally, as was attempted here, by one charged with battery of a law enforcement officer.

*Issue III. Improper remarks by the judge to prospective jurors*

Carty complains of certain remarks made by the trial judge to the prospective jurors which generally informed them of the nature of the case. The remarks were as follows:

> "Good morning. This is Cause Number CR79–49, State of Indiana vs. Danny Carty. The State of Indiana is represented by the Prosecuting Attorney, Bruce Stengel; he is over here. Danny Carty is seated over here with his attorney, Dan Helt from Newport. The State has filed charges of battery and resisting law enforcement against Mr. Carty. The incident allegedly took place back in October 1979. The charges will be read to you at a later time. Involved in the battery were Mr. Carty and Mark Pupilli, Special Deputy Sheriff. Involved in the resisting law enforcement were Mr. Carty, Ron Statler and Don Hines. That is all I am going to tell you about the incident at this time."

The record discloses no objection or comment to these remarks by Carty. When a defendant permits a court to act in a claimed erroneous manner without making an objection to its claimed misconduct, he may not now take advantage of the alleged error. *McHenry v. State*, (1980) Ind.App., 401 N.E.2d 745; *Faught v. State*, (1979) Ind., 390 N.E.2d 1011. In any event the introductory remarks of the court were, in our opinion, harmless, and undoubtedly so seemed to trial counsel. Carty's claim of prejudice on appeal is strained.

### Issue IV. Intent

Under his final argument, Carty contends that the evidence shows only that he flailed about with his legs, pressed his body against the police car and, in general, tried to avoid being taken to the police station. Carty argues that the evidence neither shows a conscious objective to kick Deputy Pupilli, nor shows he was aware of a high probability that he was doing so.

Ind.Code 35–41–2–1 (Supp.1979) defines the basis of liability for criminal conduct:

"(a) A person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense.

On culpability, Ind.Code 35–41–2–2 (Supp. 1979) provides in relevant part:

"(a) A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so.

(b) A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so."

The battery statute, Ind.Code 35–42–2–1, requires knowing and intentional conduct. Under prior law, the fact that a defendant intended to hit someone other than the actual victim did not prevent him from being found guilty of assault and battery. *Baldock v. State*, (1978) Ind.App., 379 N.E.2d 539. That the conduct was "knowingly" and "intentionally" performed may be inferred from the voluntary commission of the prohibited act as well as from the surrounding circumstances. *Perry v. State*, (1980) Ind.App., 401 N.E.2d 792; *Moore v.*

*State*, (1979) Ind.App., 395 N.E.2d 1280. The intentional commission of acts which have a known tendency to injure will support a verdict of aggravated assault and battery. *Defries v. State*, (1976) 264 Ind. 233, 342 N.E.2d 622. Specific intent to do bodily harm is not necessary to sustain the conviction. *Wise v. State*, (1980) Ind.App., 401 N.E.2d 65.

The evidence discloses that Carty kicked viciously at the officers generally and succeeded in hitting Pupilli. The circumstances disclose he was fighting the police to prevent his transportation to jail. Under the circumstances the jury could legitimately infer that he intended to kick Pupilli. Under our standard of review, we will not disturb the judgment.

For the above reasons this cause is affirmed.

Affirmed.

ROBERTSON and RATLIFF, JJ., concur.