Bradley A. SULLIVAN, Appellant–
Plaintiff,

v.

CITY OF EVANSVILLE,
Appellee–Defendant.

No. 82A01–9906–CV–191.

Court of Appeals of Indiana.

April 27, 2000.

Frank C. Capozza, Offer Korin, Katz & Korin, P.C., Jeffrey W. Waggoner, Indianapolis, Indiana, Attorneys for Appellant.

Michael D. Marine, Bradley L. Williams, Ice Miller Donadio & Ryan, Indianapolis, Indiana, Attorneys for Appellee.

Douglas D. Church, Church, Church, Hittle & Antrim, Noblesville, Indiana, Attorney for Amicus Curiae Indiana Municipal Lawyers Association.

Jo Angela Woods, Indiana Association of Cities and Towns, Indianapolis, Indiana, Attorney for Amicus Curiae Indiana Association of Cities and Towns.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff Bradley A. Sullivan ("Sullivan") challenges the trial court's grant of summary judgment in favor of appellee-defendant City of Evansville ("the City") on his appeal of the disciplinary order of the Evansville Police Merit Commission ("the Commission"). We affirm in part and reverse in part and remand with instructions.

### Issues

Sullivan raises four issues for review, which we restate as follows:

I. whether the Commission had the authority to discipline Sullivan;

II. whether Evansville Police Chief Art Gann ("Chief Gann") had the authority to discipline Sullivan;

III. whether Sullivan was denied due process of law at the Commission hearing; and

IV. whether the Commission's punishment of Sullivan was arbitrary and capricious.

### Facts and Procedural History

Sullivan was permanently appointed as an officer of the Evansville Police Department ("EPD") on September 11, 1996, after completing a one-year probationary pe-

riod. On June 30, 1997, Sullivan and his partner, Officer Bradley Turner ("Turner"), stopped a car driven by Jade Caudill ("Caudill") and questioned her passenger, seventeen-year-old Denah Dannheiser ("Dannheiser"), for underage smoking and using false identification.

On July 25, 1997, Dannheiser filed a signed and sworn citizen's complaint against Sullivan, in which she alleged that she was smoking in the passenger seat of Caudill's car on Green River Road when Sullivan drove alongside and asked her whether she was eighteen years old. Dannheiser told him she was and showed him her older sister's driver's license in response to his request for identification. Sullivan took her billfold and drove to a nearby parking lot, and Caudill and Dannheiser followed. According to Dannheiser, after she exited the car to retrieve her billfold, Sullivan asked her how much she weighed, asked her to turn around, commented on her weight, and told her that he could take her to jail and write her tickets for underage smoking and using her older sister's ID. Sullivan asked for and received Dannheiser's phone number and told her that he would not return her billfold unless she gave him a kiss. After Dannheiser kissed Sullivan on the cheek, he returned her billfold and asked her to meet him at the high school parking lot after he finished his shift; she did not do so. On July 15, 1997, he telephoned her at her home and again requested that she meet him at the high school parking lot. Dannheiser informed her mother, Debra Hite ("Hite"), of Sullivan's actions, and Hite contacted the police department's internal affairs division. After an investigation, Sullivan was found to have violated three departmental regulations: attention to duty/failure to follow standard operating procedure; improper conduct; and discourtesy.

On November 20, 1997, Chief Gann suspended Sullivan from November 22 through November 26 without pay. On November 24, 1997, Sullivan requested a hearing before the Commission to appeal Chief Gann's decision. The three-member Commission conducted the hearing on April 27, 1998, and issued its decision the following day. The Commission agreed with Chief Gann's findings, suspended Sullivan without pay for one year, and ordered him to serve a two-year probationary period. Additionally, the Commission ordered Sullivan to submit to a mental health evaluation and to any "counseling or treatment pursuant to the findings of the evaluation."

Pursuant to Indiana Code Section 36–8–3–4(e), Sullivan appealed the Commission's decision to the trial court on May 27, 1998. On February 1, 1999, Sullivan filed a motion for summary judgment in which he alleged that neither the three commissioners nor Chief Gann had the authority to discipline him because all four persons resided outside Evansville city limits in violation of Article 6, Section 6 of the Indiana Constitution;[1] that he had been denied due process at the disciplinary hearing; and that his punishment was arbitrary and capricious. On March 23, 1999, the City filed its own summary judgment motion in which it argued, *inter alia*, that Sullivan had waived his residency arguments by failing to raise them at the disciplinary hearing. The trial court held a hearing on both motions and granted summary judgment in favor of the City on April 23, 1999. Sullivan now appeals; additional facts will be supplied as necessary.

### Discussion and Decision

#### Standard of Review [2]

When reviewing the grant or denial of a motion for summary judgment, we

1. Article 6, Section 6 of the Indiana Constitution reads in relevant part: "All county, township, and town officers, shall reside within their respective counties, townships, and towns; and shall keep their respective offices at such places therein, and perform such duties, as may be directed by law."

2. Without citing any authority, the City asserts that the trial court's ruling "was proce-

apply the same standard as the trial court: namely, that summary judgment is appropriate where there are no designated genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Indiana Ins. Co. v. American Community Servs., Inc.,* 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999). The moving party must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-moving party required to come forward with contrary evidence. *Id.* We liberally construe all designated evidentiary material in a light most favorable to the nonmovant to determine whether a genuine issue of fact exists for trial. *Interstate Cold Storage, Inc. v. General Motors Corp.,* 720 N.E.2d 727, 730 (Ind.Ct.App.1999).

 "Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment." *Id.* Cross motions for summary judgment do not alter our standard of review. *See American Community Servs.,* 718 N.E.2d at 1152. "Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of law to the facts." *Interstate Cold Storage,* 720 N.E.2d at 730. However, "[a] grant of summary judgment may be affirmed upon any theory supported by the designated materials." *Id.* As the party appealing the grant of summary judgment, Sullivan bears the burden of persuading us that the trial court erred. *See American Community Servs.,* 718 N.E.2d at 1152.

 The discipline of police officers is within the province of the government's executive, rather than judicial, branch.

McDaniel v. City of Evansville, 604 N.E.2d 1223, 1225 (Ind.Ct.App.1992), *trans. denied* (1993). "For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *Id.*

Judicial review of administrative decisions is very limited. Deference is to be given by the reviewing court to the expertise of the administrative body. Discretionary decisions of administrative bodies, including those of police merit commissions, are entitled to deference absent a showing that the decision was arbitrary and capricious, or an abuse of discretion, or otherwise not in accordance with law. Further, review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. The reviewing court may not substitute its judgment for that of the administrative body or modify a penalty imposed by that body in a disciplinary action, without a showing that such action was arbitrary and capricious. *City of Indianapolis v. Woods,* 703 N.E.2d 1087, 1090–91 (Ind.Ct.App.1998), *trans. denied* (1999) (citations omitted).

## I. Commission's Authority to Discipline Sullivan

 The tenure given a police officer "is a constitutionally protected interest requiring the opportunity for a fair hearing conducted in good faith before a full and impartial body." *Atkinson v. City of Marion,* 411 N.E.2d 622, 628 (Ind.Ct.App. 1980); *see also Dell v. City of Tipton,* 618 N.E.2d 1338, 1342 (Ind.Ct.App.1993) (referring to IND.CODE § 36–8–3–4, which outlines police disciplinary hearing and appeal procedures). "Although such proceedings

durally styled a grant of a motion for summary judgment, but was in fact a ruling on the merits under [Indiana Code Section] 36–8–3–4(i)." "Failure of a party to present a cogent argument in [its] brief is considered a waiver of that issue." *Marsh v. Dixon,* 707

N.E.2d 998, 999–1000 (Ind.Ct.App.1999), *trans. denied* (citing Ind. Appellate Rule 8.3(A)(7)). Therefore, we shall review the trial court's decision under our customary summary judgment standard.

are not subject to all of the procedural safeguards afforded at a trial, it is evident, as our courts have held, that the procedural standards should be at the highest level workable under the circumstances, and that the fact-finding process should be free of suspicion or even the appearance of impropriety." *Atkinson*, 411 .N.E.2d at 628. Any decision of an administrative board "predicated upon a hearing devoid of the requisite requirements is illegal and void." *City of Marion v. Antrobus*, 448 N.E.2d 325, 329 (Ind.Ct.App.1983). "One of the requisites of a fair hearing is that the administrative board have a legal quorum[.]" *Id.*[3]

Sullivan contends that because none of its members fulfilled the Indiana Constitution's residency requirements, the Commission lacked a legal quorum to hear his appeal; therefore, its decision is void and must be reversed as a matter of law. Sullivan relies heavily on *Antrobus*, in which a police officer challenged the eligibility of two administrative board members who were to preside over his disciplinary hearing and moved for dismissal of the pending charges due to the lack of a "legal quorum of members to conduct official business."[4] *See Antrobus*, 448 N.E.2d at 327. The trial court concluded that the board lacked a legal quorum and that its decision to dismiss Antrobus was illegal and void. In upholding the trial court's determination, this court made the following observations:

> It is uncontroverted that the city attorney disqualified himself on the grounds of a conflict of interest. This disqualification notwithstanding, there appeared to be a quorum present to conduct business inasmuch as the city controller . . . and the city civil engineer . . . were present. *However, prior to the beginning of the hearing, Antrobus objected to the composition of the Board.* His objection as to [the city controller] was overruled but his objection as to [the city civil engineer] was taken under advisement. In any event, if we find that either one of the two remaining Board members was not legally sitting on the Board, we must uphold the trial court's summary judgment that there was no legal quorum.

*Id.* at 329–30 (emphasis added). Nevertheless, considering that Sullivan failed to object to the eligibility of the commissioners before the hearing, and that *Antrobus* does not reach the concepts of waiver and *de facto* public officers, we find his reliance thereon to be misplaced.

Rather, we find *Atkinson* and several supreme court cases regarding judges pro tempore to be instructive on this issue. In *Atkinson*, a police officer belatedly challenged the "conflicting roles" of the city attorney (who presided over the administrative board) and the deputy city attorney (who served as police department advocate) as a denial of due process. *See Atkinson*, 411 N.E.2d at 628. This court concluded that Atkinson had waived consideration of this issue by failing to object at the hearing: "such issue was raised for the first time at a point when the Board could no longer attempt to rectify the situation, namely, when Atkinson filed his complaint for judicial review of the Board's action by the [trial] court." *Id.* at 628–29.[5]

---

**3.** Under EVANSVILLE, IND., MUN.CODE § 3.30.37.506(F), "[t]wo members of the Commission shall constitute a quorum for the transaction of business."

**4.** In *Antrobus*, the administrative board comprised three members, one of whom disqualified himself before evidence was presented at the hearing. *See Antrobus*, 448 N.E.2d at 327. Antrobus then challenged the eligibility of the two remaining board members on the basis of one's failure to meet statutory residency requirements and the other's allegedly illegal appointment and kinship to one of the adversarial witnesses. *See id.* According to the *Antrobus* court, the trial court correctly ruled that the former was not a member of the board "because he failed to meet the residency requirement of Section 6 of Article 6 of the Indiana Constitution." *Id.* at 330.

**5.** In a footnote in his appellate brief, Sullivan asserts that EPD's attorney assumed the "dual role" of prosecutor and the Commission's legal advisor at the hearing. Under *Atkinson*,

In *Gordy v. State*, 262 Ind. 275, 315 N.E.2d 362 (1974), defendant objected for the first time on appeal to the service of a commissioner who presided over his trial, where the record failed to disclose whether "the Commissioner was ever formally qualified as a judge pro tempore or as a special judge" pursuant to statute. *See id.*, 262 Ind. at 282, 315 N.E.2d at 366.

> Although the defendant made no objection at the trial and made no such claim of error in his motion to correct errors, he now seeks a reversal by reason of the Commissioner's role in the proceedings....
>
>> ["]The defect pointed out was not affecting the jurisdiction of the court, but the right and authority of its presiding judge to act as such. The judge who presided at the trial of this case was acting under color of authority, and he was a judge *de facto* if not a judge *de jure*.
>>
>> ["]It has been held repeatedly by this court and the Supreme Court that when a judge has been called or an attorney appointed to try a cause, and no objection is made at the time, or to his sitting in the cause when he assumes to act, all objections thereto will be deemed waived on appeal. We see no reason why the rule announced and applied to special judges should not apply with equal force to a judge *pro tempore*.["]
>
> Such a rationale is equally applicable to the case at bar.... The Commissioner did not merely usurp this authority and set up a mock court.... The Commissioner was acting as judge, a duty he clearly may assume under the statute if his appointment is procedurally correct. Both parties submitted to his authority as judge and neither questioned this authority until this appeal was initiated. Thus, he was operating under color of

authority, and served as a judge de facto if not as a judge de jure. His authority as a judge de facto may not be raised on appeal for the first time.

*Id.*, 262 Ind. at 282–83, 315 N.E.2d at 366–67 (quoting *Jordan v. Indianapolis Coal Co.*, 52 Ind.App. 542, 544–45, 100 N.E. 880, 881 (1913)) (other citations omitted).

Our supreme court cited *Gordy* with approval in *Survance v. State*, 465 N.E.2d 1076 (Ind.1984):

> The irregularity of [the judge pro tempore] presiding during the presence of the regular judge and while he was conducting other judicial business in the same court could present a problem compelling reversal. In this case, however, there was no objection interposed, and we do not view the error as "fundamental" as heretofore defined in *Phillips v. State*, [268 Ind. 556, 561, 376 N.E.2d 1143, 1146 (1978)] and *Nelson v. State*, [274 Ind. 218, 409 N.E.2d 637, 638 (Ind. 1980)]....[6]
>
> It is equally well settled, however, that the authority of one who acts as a judge *de facto* under color of authority cannot be collaterally attacked. Any objections to the authority of an attorney appointed to try a cause must be made at the time when he assumes to act or they will be deemed waived on appeal....
>
> In the present case [the judge pro tempore] was acting under color of authority pursuant to his appointment as judge pro tempore, and as such as a judge *de facto*, if not a judge *de jure*. Any challenge of his authority to so act should have been made at the time the irregularities occurred, and may not be raised on appeal for the first time.

*Survance*, 465 N.E.2d at 1081–82 (citations omitted). Clearly, as the supreme court

---

he has waived review of this belated contention.

**6.** The *Nelson* court characterized "fundamental error" as "blatant, and the potential for

harm must be substantial and appear clearly and prospectively." *Nelson*, 409 N.E.2d at 638.

concluded in *Floyd v. State*, 650 N.E.2d 28, 32 (Ind.1994),

> [I]t has been the long-standing policy of this court to view the authority of the officer appointed to try a case not as affecting the jurisdiction of the court. Therefore, the failure of a party to object at trial to the authority of a court officer to enter a final appealable order waives the issue for appeal.

The City cites several cases addressing the actions of other *de facto* public officers. *See, e.g., Hasselbring v. State*, 441 N.E.2d 514, 517 (Ind.Ct.App.1982) (defendant challenged eligibility of jury commissioner on residency grounds; "qualifications of a jury commissioner or other public officer cannot be collaterally attacked"). We also find instructive the following language in *Carty v. State*, 421 N.E.2d 1151 (Ind.Ct. App.1981), in which defendant asserted for the first time on appeal that the county sheriff did not have statutory authority to appoint the special deputy whom defendant was accused of battering:

> One who holds office under the color of an election or an appointment and discharges the purported duties of office in full view of the public without being an intruder or usurper, is at least a de facto official. The authority of a de facto official cannot be collaterally attacked. The validity of a de facto officer's acts may only be challenged directly against the individual who purports to hold office. For the protection of the public who deal with him, the acts of a de facto officer are as valid as the acts of a de jure officer. All that is required to make an officer de facto is: that he claim the office, be in possession of it, and perform its duties under the color of election or appointment. If their election or appointment were valid they (de facto officers) would be de jure officers. A person whose election is irregular and void because he is ineligible is nevertheless an officer, de facto, if he discharges the duties of his office under the color of an election.

*Id.* at 1154 (citations omitted).

 Attempting to distinguish the City's cited authorities from the case at bar, Sullivan argues that the *de facto* public officer cases are inapplicable because they do not involve "members of an administrative agency acting in their judicial role while serving unconstitutionally and thus, *not having a legal quorum to act*," nor do they address "the application of [Article 6, Section 6] of Indiana's Constitution to administrative bodies." Sullivan's assertion constitutes a distinction without a substantive difference. Indeed, "[c]onstitutional errors are not necessarily fundamental errors and may be waived if not properly preserved on appeal." *Manns v. Skolnik*, 666 N.E.2d 1236, 1241 (Ind.Ct.App.1996), *trans. denied.* "The appellant has the burden of proving that the error is fundamental." *Id.* Unlike Antrobus, Sullivan failed to challenge the eligibility of the Commission members before his hearing, and he has failed to demonstrate that the administration of a disciplinary hearing by *de facto* public officers acting without objection under the color of their appointment constitutes fundamental error.

Nevertheless, Sullivan argues that he properly raised his constitutional claim before the trial court, citing *Wilson v. Board of Indiana Employment Sec. Div.*, 270 Ind. 302, 385 N.E.2d 438 (1979), *cert. denied*, 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101 (1979), and *Indiana Dep't. of Highways v. Dixon*, 541 N.E.2d 877 (Ind. 1989), for the proposition that a constitutional issue need not be raised at the administrative level as a precondition to judicial review. However, the constitutional issues in *Wilson* (administrative due process concerns) and *Dixon* (First Amendment free speech protections) were purely questions of law. The determination of the Commission members' eligibility under constitutional residency requirements simply demands the application of a single constitutional provision to easily ascertain-

able facts of public record, a task clearly within the competence of an administrative tribunal. Thus, the exception cited by Sullivan would not apply in the instant case. *See Portland Summer Festival and Homecoming v. Dep't of Revenue*, 624 N.E.2d 45, 48 (Ind.Ct.App.1993), *trans. denied* (1994) (distinguishing *Wilson* and concluding that exception did not apply because appellant raised "questions of both fact and law" rather than "a purely legal question").

 Finally, Sullivan asserts for the first time on appeal that the "undisputed evidence" establishes that he did not learn of the "constitutional violation until long after" the hearing and therefore could not have raised it at the hearing. He directs us to the affidavit of Vanderburgh County Board of Registration member Susan Kirk, dated January 4, 1999 (more than eight months after the hearing), which lists the addresses of the commissioners and Chief Gann and affirms that all such addresses are "outside of the corporate limits of the city of Evansville." Having failed to raise this argument before the trial court, Sullivan has waived its consideration on appeal. *See Rausch v. Reinhold*, 716 N.E.2d 993, 1002 (Ind.Ct.App.1999) (appellant may not raise issue on appeal that was not first presented to trial court).

In summary, we conclude that the commissioners, acting as *de facto* public officials under the color of their appointment, did have the authority to discipline Sullivan, and that Sullivan waived any challenge to their authority by failing to make a timely objection at the hearing. Thus, we affirm the trial court's grant of summary judgment on this issue.

## II. Chief Gann's Authority to Discipline Sullivan

 Because Sullivan failed to raise the issue of Chief Gann's residency during the hearing, he has waived this issue for the reasons stated in the previous section. We affirm the trial court's ruling in favor of the City on this issue.

## III. Denial of Due Process

Sullivan contends that he was denied due process of law at the hearing because he was not given written notice of the charges to be considered by the Commission and because he was punished for uncharged and uninvestigated "prior bad acts."

 Indiana Code Section 36–8–3–4(c) (1999) reads in relevant part as follows:

Before a member of a police . . . department may be suspended in excess of five (5) days without pay, demoted, or dismissed, the safety board shall offer the member an opportunity for a hearing. If a member desires a hearing, the member must request the hearing not more than five (5) days after the notice of the suspension, demotion, or dismissal. Written notice shall be given either by service upon the member in person or by a copy left at the member's last and usual place of residence at least fourteen (14) days before the date set for the hearing. . . . The notice must state:

(1) the time and place of the hearing;

(2) the charges against the member;

(3) the specific conduct that comprises the charges;

(4) that the member is entitled to be represented by counsel;

(5) that the member is entitled to call and cross-examine witnesses;

(6) that the member is entitled to require the production of evidence; and

(7) that the member is entitled to have subpoenas issued, served, and executed in the county where the unit is located.

Sullivan requested a hearing to appeal the five-day suspension ordered by Chief Gann. Having reviewed Dannheiser's formal written complaint and having appeared before the Commission at a date and time agreed upon by counsel for both parties, Sullivan has waived consideration

of the notice issue with respect to the Commission's consideration of Dannheiser's complaint. *See Carr v. Carr,* 685 N.E.2d 92, 95 (Ind.Ct.App.1997) ("Error resulting from technical noncompliance with notice requirements is waived where the complaining party had actual notice and participated in the proceedings.") (citing *City of New Haven v. Indiana Suburban Sewers, Inc.,* 257 Ind. 609, 612, 277 N.E.2d 361, 362 (1972) ("We believe that it cannot be seriously urged but that the law of this state will disregard the technical requirement of notice, insofar as it was required to invoke jurisdiction of the person, if the party complaining had actual notice and participated in the proceedings. . . . The logic of this rule is the same whether applied by judicial bodies or administrative boards[.]")).

▉ As the City observes, the "real thrust" of Sullivan's argument is that EPD should not have presented evidence of acts similar to the Dannheiser incident at the hearing. Indeed, EPD's counsel represented to the commissioners that evidence of past incidents would be presented "for informational purposes only" and "to show a pattern . . . of behavior of this particular [o]fficer." On direct examination, Sullivan denied ever having "met any women off duty that ar[o]se from meeting them on duty." Sullivan further testified that he had never asked Dannheiser to turn around; had never asked her for a kiss; had never asked her for her phone number; and had never asked her to meet him in the high school parking lot. Thereafter, EPD attempted to impeach Sullivan's testimony with evidence that he had requested another young woman's pager number and had asked her to meet him in the high school parking lot. Sullivan's counsel objected to EPD's presentation of evidence as follows:

> I'm going to have a further objection to this, in the contract that the [p]olice [o]fficers have in their Bill of Rights it stated, set forth that any civilian witness['s] statements must be reduced in writing and signed before a sworn, signed before, ah, and all statement of civilian witnesses shall also be signed and sworn to and that's on Article 16 of the Bill of Rights, Sec. A1A, and I have that before me and I can furnish that to you. I know we didn't have any discovery in this matter but I would have assumed that everything that had been furnished and this witness is about to testify to things where she's not given any statement, she's a civilian witness and she's about to give evidence that, well I have no idea what it's going to be.

The Commission overruled the objection, deeming EPD's evidence to be admissible as rebuttal:

> EPD also called Denise Burkes, an employee at a bank where Sullivan had worked part time as a security guard. As Burkes was describing a confrontation between Sullivan and her boyfriend at her home, Sullivan's counsel intervened:
>
> [SULLIVAN'S COUNSEL]: I'm going to object to this line of questioning to this witness. I don't know where we are going here with this.
> BY COMMISSIONER: I'm a little curious myself.
> [SULLIVAN'S COUNSEL]: It sounds like, yea[h], what's . . .
> BY COMMISSIONER: Where are we headed[?]
> [SULLIVAN'S COUNSEL]: This is not a pattern . . .
> [EPD'S COUNSEL]: Well, Mr. Sullivan has made the statement that if he wanted Ms. Dannheiser he would [have] gone after [her] boyfriend and wrote [*sic*] him tickets. In this situation, that's exactly what he did.
> BY COMMISSIONER: Okay, why don't we go ahead then.

Finally, the City called a second bank employee, Shannon Faith ("Faith"):

> [EPD'S COUNSEL]: Speaking of one particular incident, did Mr. Sullivan, while you were eating, did he ever come up to you and stand in front of your

face, put his crouch [*sic*] in your face and say do you want to play with my gun?

[FAITH]: Yes.

[EPD'S COUNSEL]: And how did you take that?

[FAITH]: I took it as a sexual reference.

[SULLIVAN'S COUNSEL]: I'm going to object to this line of questioning. This is obviously something that's not, it's something that's not in line with the rebuttal that all of this evidence has come into. It's not rebutting anything that Sullivan said. This is new territory. We haven't gotten into that at all and secondly it's not establishing any sort of pattern and so for that reason this evidence should not be admissible here.

[EPD'S COUNSEL]: It's establishing a pattern of his behavior around females, his intimidation, his sexual preferences and references throughout the testimony of Ms. Dannheiser and it continues or it did continue at Old National Bank and therefore I think it's relevant and that it should come in.

BY COMMISSIONER: Okay, I think it is relevant and I think i[t] shows again more testimony toward a pattern of behavior so I think the motion should be objected [*sic*]. Do you all agree with that?

7. As the City points out, Sullivan did not submit his attorney's affidavit in support of his summary judgment motion, but in reply to the City's response.

8. The procedural posture of the hearing differed markedly from that of a traditional judicial proceeding, in that EPD called Sullivan to testify and presented its "rebuttal" witnesses during its case-in-chief. After Sullivan rested his case, the Commission did not offer EPD further opportunity for rebuttal and simply asked the parties whether they wanted to make a closing statement. Sullivan failed to object to this unusual procedure at the hearing and has waived any objection thereto on appeal. *See Lilley v. City of Carmel*, 527 N.E.2d 224, 227 (Ind.Ct.App.1988) ("One cannot sit idly by until the Board announces

We reject Sullivan's characterization of the foregoing evidence as "charges" requiring written notice under EPD's "Bill of Rights" or Indiana Code Section 36–8–3–4. Sullivan failed to avail himself of the opportunity to conduct discovery of EPD's witnesses and the subject of their testimony. Thus, he cannot complain that he was without proper notice of them, or that he was somehow misled by EPD's attorney with respect to the scope of the witnesses' testimony. *See Carr*, 685 N.E.2d at 95 ("reversal may not be predicated upon error invited by the parties"); *see also* Ind. Trial Rule 28(F) (application of discovery rules to administrative hearings). In an affidavit,[7] Sullivan's counsel stated EPD's counsel had "advised [him] that the only such matter to be addressed would be the alleged incident involving Denah Dannheiser"; without more, we cannot conclude that EPD's counsel either misled Sullivan about the possibility of calling "rebuttal"[8] witnesses or prevented him from conducting discovery. Under these circumstances, Sullivan's cries of "trial by ambush" ring exceedingly hollow, and we consider his due process arguments to be nothing more than claims of evidentiary inadmissibility.[9]

 Police merit board hearings "are administrative actions which allow for less formality than in civil proceedings before a court and we will not disturb the [merit board's] decision for the lack of

its decision and then object to the procedure utilized. Issues are not preserved for appeal unless a proper and timely objection is made.").

9. Nevertheless, we remind the City that Indiana Evidence Rule 404(b) expressly prohibits evidence of "other crimes, wrongs, or acts ... to prove the character of a person in order to show action in conformity therewith." *But see* ROBERT LOWELL MILLER, JR., 12 INDIANA PRACTICE § 608.207 at 150 (2d ed.1995) (regarding "opening the door" to admission of otherwise inadmissible evidence for impeachment purposes). In any event, we note that Sullivan never specifically objected to the witnesses' testimony under Evidence Rule 404(b), but strictly on general relevancy grounds.

promulgated rules of evidence as long as the hearing was full and fair, before an impartial body and conducted in good faith." *Connell v. City of Logansport*, 397 N.E.2d 1058, 1063 (Ind.Ct.App.1979). Although Sullivan did not conduct discovery of EPD's "rebuttal" witnesses, he took advantage of the opportunity to cross-examine them. Also, Sullivan raises no substantive claims regarding the Commission's partiality or lack of good faith. More dispositively, it is well settled that "the admission of incompetent or immaterial evidence will not justify setting aside administrative agency action if there is substantial evidence to support the agency's decision." *L.S. Ayres & Co. v. Indianapolis Power & Light Co.*, 169 Ind. App. 652, 700, 351 N.E.2d 814, 844 (1976); *City of Evansville v. Southern Indiana Gas & Elec. Co.*, 167 Ind.App. 472, 505, 339 N.E.2d 562, 583 n. 9 (1975); *see also Indiana State Bd. of Embalmers and Funeral Directors v. Kaufman*, 463 N.E.2d 513, 520 (Ind.Ct.App.1984) (harmless error doctrine applies to judicial review of administrative proceedings; appellant bears burden of showing reversible error). Here, the Commission's decision is supported by substantial evidence, even without the testimony of EPD's rebuttal witnesses. Given that Sullivan has failed to demonstrate reversible error, and that the sufficiency of the evidence supporting Sullivan's suspension is not before us on appeal, we affirm summary judgment in favor of the City on the issue of due process.

## IV. Punishment

Sullivan's argument on this issue is two-fold: (1) the Commission did not have the authority to place him on two years' probation and require him to undergo a mental health examination; and (2) the punishment issued by the Commission was arbitrary and capricious. We address each contention in turn.

### A. Commission's authority to impose probation and order a mental health evaluation

Administrative bodies "may impose only those disciplinary measures sanctioned by the enabling statute." *McDaniel*, 604 N.E.2d at 1226. Indiana Code Section 36-8-3-4(b) provides that a police officer "may be disciplined by demotion, dismissal, reprimand, forfeiture, or suspension." The statute clearly does not authorize the imposition of either a probationary period or a mental health evaluation as a form of discipline. Sullivan has already submitted to a mental health evaluation as a precondition to resuming his policing duties, and the issue is therefore moot; nevertheless, we reverse the trial court's grant of summary judgment with respect to both the evaluation and the two-year probationary period and remand to the Commission with instructions to vacate that portion of its order.

### B. Arbitrary and capricious

As for his one-year suspension by the Commission in addition to his five-day suspension by Chief Gann, Sullivan argues that although he committed no crimes, he was deprived of over $47,000 in salary, uniform allowances, and part-time employment. This, he contends, is a "pretty stiff fine for violating three department regulations."

We reiterate that the discipline of police officers falls within the province of the executive branch of government, not the judicial. *McDaniel*, 604 N.E.2d at 1225. "For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *Id.* We may not modify a penalty imposed by that body in a disciplinary action unless the challenging party shows that such action was arbitrary and capricious. *Woods*, 703 N.E.2d at 1091.

An arbitrary and capricious decision is one which is patently unreasonable. It is made without consideration of the

facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion. Substantial evidence is that relevant evidence which a reasonable mind might accept as adequate to support a conclusion. The evidence is not to be reweighed by a reviewing court.

*Id.* Given this standard, we fail to discern how the Commission's decision rises to the level of patently unreasonable. We therefore affirm the trial court's grant of summary judgment with respect to the propriety of Sullivan's one-year suspension.

In sum, we reverse the trial court's grant of summary judgment in favor of the City with respect to the Commission's order that Sullivan undergo a mental health evaluation and serve a two-year probationary period and remand to the Commission with instructions to vacate that portion of its order. In all other respects, we affirm the judgment of the trial court.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J. and ROBB, J., concur.