**In the Matter of the INVOLUNTARY COMMITMENT OF A.M.**

No. 82A01–1101–MH–29.

Court of Appeals of Indiana.

Oct. 12, 2011.

John Andrew Goodridge, Evansville, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephanie Rothenberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

A.M. appeals from the trial court's order involuntarily committing her to a mental health facility. She raises one issue for our review: whether sufficient evidence supports the involuntary commitment order. Finding sufficient evidence in the record, we affirm.

### Facts and Procedural History

On September 23, 2010, A.M. was involved in an incident at a restaurant where she was talking to several staff members and patrons, causing a disturbance, and generally exhibiting behaviors consistent with mania. Local authorities were called, and A.M. was detained on an emergency basis at Deaconess Hospital. Shortly after her admission, Dr. James Given, M.D., a psychologist at Deaconess Hospital, evaluated A.M. and concluded that she had bipolar disorder and was gravely disabled. On October 1, 2010, the trial court held a hearing on the emergency detention and

approved Dr. Given's petition for a temporary commitment of A.M., which he filed the same day.

On December 6, 2010, Dr. Given filed a Report Requesting a Regular Commitment of A.M. and the trial court held a hearing on December 22, 2010. At that hearing, Dr. Given testified that his current clinical diagnosis of A.M.'s condition remained one of bipolar disorder, and he reiterated his opinion that A.M. was gravely disabled. Dr. Given stated that A.M. had trouble sleeping and that her mood and affect were labile. A.M. had also exhibited agitation and continued delusional thoughts, such as having an inheritance or being a police officer. The hospital staff could not dissuade her from her delusional thoughts, and they had not improved since admission.

According to Dr. Given, A.M.'s delusional thoughts also affected her judgment, which he described as "poor." Tr. 25. A.M. did not believe that she had bipolar disorder, and her insight into her condition was "nil." Tr. 25. Because she did not think that she had bipolar disorder, A.M. had a history of non-compliance with her medication regimen and, as of the hearing, had only recently begun to take her medication regularly, which Dr. Given suspected she did to appease the staff so that she could leave the hospital. Dr. Given added that "if she has a mind to, she will quickly refuse these medications." Tr. 19. He also stated that A.M.'s condition was stable with her medication, but without it, her diagnosis "would be very poor," she would experience continued problems, and any potential recovery would be delayed. Tr. 12.

Dr. Given also testified that A.M.'s impulsivity was high, which could lead to problems because it caused her to interfere in the affairs of others. While at the hospital, A.M. spoke to other patients and attempted to persuade them not to follow doctors' recommendations. She also made quite a few calls to a local attorney, and accused the hospital nursing staff of lying when they relayed the attorney's desire that she not telephone him. Dr. Given testified that A.M. would not do well in a less restrictive environment and needed continued hospitalization.

Following the hearing, the trial court concluded that A.M. had bipolar disorder, which is a mental illness, and that she was gravely disabled. It therefore ordered her regular involuntary commitment. A.M. now appeals.

### Discussion and Decision[1]

#### Standard of Review

When reviewing whether the evidence supports an involuntary commit-

---

1. Before reaching the merits of A.M.'s appeal, we pause to note some irregularities with the final appealed order in this case. A.M.'s brief makes clear that she is appealing the trial court's order of regular involuntary commitment. However, the document in the record entitled "Order of REGULAR Commitment Following Extended Temporary Commitment" and dated December 22, 2010 (the day of the hearing), is unsigned. App. 32–33. There is no final appealed order in the back of A.M.'s brief as is required by Indiana Appellate Rule 46(A)(10). Still, the Chronological Case Summary indicates that a regular commitment order was entered, and the record contains an "Order to Treat Following Regular Commitment" signed by Magistrate Terrell Maurer that authorizes A.M.'s doctor to override A.M.'s refusal to take medication "during the course of the patient's extended temporary and/or regular commitment (as the case may be)[.]" App. 38. While we think that this signed order to treat sufficiently incorporates the order of involuntary commitment such that it constitutes a final, appealable order by the trial court, we draw the trial court's attention to the fact that this irregularity frustrated and delayed appellate review.

Turning, then, to the "Order to Treat Following Regular Commitment," we further

ment, we look only to the evidence and reasonable inferences therefrom most favorable to the trial court's judgment. *Commitment of S.T. v. Community Hosp. North*, 930 N.E.2d 684, 687–88 (Ind.Ct. App.2010). We may not reweigh the evidence or judge the credibility of witnesses. *Id.* " 'If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, we will affirm the order even if other reasonable conclusions are possible.' " *Id.* (quoting *Commitment of M.M.*, 826 N.E.2d 90, 96 (Ind. Ct.App.2005), *trans. denied* ).

■■■■ However, civil commitment is a significant deprivation of liberty, and it requires due process protections. *C.J. v. Health and Hosp. Corp. of Marion County*, 842 N.E.2d 407, 409 (Ind.Ct.App.2006) (citing *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). The petitioner must show " 'that the individual suffers from something more serious than is demonstrated by idiosyncratic

behavior.' " *In re Commitment of Bradbury*, 845 N.E.2d 1063, 1065 (Ind.Ct.App. 2006) (quoting *Addington*, 441 U.S. at 427, 99 S.Ct. 1804). A person may be involuntarily committed in Indiana only if the petitioner proves by clear and convincing evidence that (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate. Ind.Code § 12–26–2–5(e)(1); *C.J.*, 842 N.E.2d at 409.

## Analysis

### Mental Illness and Grave Disability

■■■ A.M. does not challenge the trial court's finding that she is mentally ill, and, regardless, we have previously observed that bipolar disorder falls within the term "mental illness." *Bradbury*, 845 N.E.2d at 1064 (citing I.C. § 12–7–2–130). Instead, she maintains that insufficient evidence supports the trial court's conclusion that she is gravely disabled. We disagree.

note that this order is defective in that it is signed only by a magistrate. A magistrate does not have the power of judicial mandate, and may not enter a final appealable order unless sitting as a judge pro tempore or a special judge, or in certain exceptions. I.C. § 33–23–5–8. Those exceptions are criminal matters and matters specified in I.C. § 33–29–2–4 (jurisdiction of small claims docket) or I.C. § 34–26–5 (protective orders to prevent domestic or family violence). I.C. § 33–23–5–9. Otherwise, the magistrate shall report findings, but "[t]he court shall enter the order." I.C. § 33–23–5–9.

This case concerns an involuntary commitment, and is not a criminal matter, small claims matter, or an order on a protective order petition. Even though Vanderburgh County Local Rule 82–AR00–1.02 ("Case Allocation Plan") assigns mental health cases to Division VI ("Criminal, Small Claims and Misdemeanor/Traffic"), this assignment in and of itself does not afford magistrates the power to sign final orders of involuntary commitment. Therefore, we must conclude that the order of regular commitment is defective because it lacks a judge's signature.

This defect notwithstanding, A.M. has waived any claim to reversible error because she did not raise it at the hearing or on appeal. "Our supreme court has long held that defects in the authority of a court officer, as opposed to the jurisdiction of the trial court itself, to enter a final order will be waived if not raised through timely objection." *City of Indianapolis v. Hicks*, 932 N.E.2d 227, 231 (Ind.Ct.App.2010) (citing *Floyd v. State*, 650 N.E.2d 28, 33 (Ind.1994)), *trans. denied.* "[A]ny objection to the authority of an adjudicative officer must be raised at the first instance the irregularity occurs, or at least within such time as the tribunal is able to remedy the defect." *Id.* (citing *Sullivan v. Evansville*, 728 N.E.2d 182, 188–90 (Ind.Ct. App.2000)). In *Hicks*, we held that a party waived a claim to error for failing to timely object to an order on a motion to correct error signed by a magistrate but not a judge. *Id.* Here, having failed to timely call the court's attention to the commitment order signed only by Magistrate Maurer, A.M. has waived the issue for our review.

The term "gravely disabled" is defined by statute:

"Gravely disabled", for the purposes of IC 12–26, means a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently

I.C. § 12–7–2–96.

In support of its argument, the State directs our attention to *J.S. v. Center for Behavioral Health*, 846 N.E.2d 1106, 1113 (Ind.Ct.App.2006), *trans. denied.* There, we held that sufficient evidence supported the trial court's finding of grave disability where J.S. did not believe that she was mentally ill, did not want to take her medication, and experienced significant psychotic symptoms when she was off her medication. *Id.* at 1113. Moreover, in *Bradbury*, 845 N.E.2d at 1065–66, we held that sufficient evidence supported a finding of grave disability where Bradbury exhibited disorganized, aggressive, agitated, and delusional behavior, hardly slept, and required seclusion from others. Bradbury's symptoms resulted from his failure to take his medication, and, even though his condition improved during his short hospital stay, his treating physician opined that it was a typical improvement between episodes of mania. *Id.*

The evidence here is more than sufficient for us to conclude that trial court's commitment order represents a conclusion that a reasonable person could have drawn. *Commitment of S.T.*, 930 N.E.2d at 687–88. Similar to the facts of *J.S.*, A.M. has had a history of non-compliance

with her medication regimen and demonstrated no insight into her condition. Her acquiescence leading up to the hearing was merely an outgrowth of a desire to appease the hospital staff so that she could be discharged. Her inclination was to not take her medicine. Also similar to J.S., without her medication, A.M.'s prognosis was very poor and would lead to continued problems and delayed recovery.

Furthermore, A.M. exhibited behaviors similar to those of Bradbury in that her bipolar disorder caused delusions, agitation, and trouble sleeping. She had problems with others by interfering in their affairs and recommending that they not follow the directions of medical staff. Her treating physician testified that her mood and affect were labile, and that her judgment was "poor" and her insight was "nil." Tr. 25.

This evidence sufficiently supports the conclusion that A.M. had a substantial impairment or obvious deterioration in judgment. A.M.'s deficiency caused an inability to function properly in that it prevented her from taking medication, which in turn led to other maladies.

*Appropriateness of Commitment*

■ Sufficient evidence also supports the conclusion that A.M.'s commitment is appropriate. Dr. Given testified that A.M. would not do well in a less restrictive environment and needed continued hospitalization. He expressed worries for her safety given her tendency to interfere with others' affairs. Dr. Given also stated that he had not seen as robust of a response to medication from A.M. as she has exhibited in the past, and noted that bipolar disorder is sometimes harder to treat as time goes on. This made it all the more important that medical professionals monitor compliance with her medication regimen. Overall, according to Dr. Given, A.M. needed to

show much better insight into her condition before he would recommend discharging her.

### Conclusion

Sufficient evidence supports the trial court's findings, and its commitment order represents a conclusion that a reasonable person could have drawn. A.M.'s arguments to the contrary amount to an invitation to reweigh the evidence, which we will not do. *Commitment of S.T.*, 930 N.E.2d at 687–88.

Affirmed.

MATHIAS, J., and CRONE, J., concur.