## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 19 2018, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Victoria L. Bailey
Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Bryan H. Babb
Sarah C. Thompson
Bose McKinney & Evans LLP
Indianapolis, Indiana

Anna Kirkman
Eskenazi Health
Legal Services Department
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Civil Commitment of:<br><br>D.H.,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Eskenazi Health/Midtown Mental Health CMHC,<br><br>*Appellee-Petitioner.* | September 19, 2018<br><br>Court of Appeals Case No.<br>18A-MH-635<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Steven R. Eichholtz, Judge<br>The Honorable<br>Kelly M. Scanlan, Commissioner<br><br>Trial Court Cause No.<br>49D08-1712-MH-44331 |

**Kirsch, Judge.**

[1] D.H. appeals the trial court's order extending her temporary involuntary commitment to a regular involuntary commitment. D.H. raises the following restated issue for our review: whether the order should be remanded because it is defective.

[2] We affirm.

## Facts and Procedural History

[3] D.H. suffers from schizophrenia and diabetes, and prior to 2009, she was on a regular commitment for "a couple of years" or "a few years." *Tr. Vol. II* at 9. Psychiatrist Dr. Hector Diez ("Dr. Diez"), who works for Eskenazi Health Midtown Community Mental Health ("Midtown"), began working with D.H. in March of 2017, around one year before the hearing in this case. *Id*. at 5-6. D.H. was not on an involuntary commitment at that time, but had "an established diagnosis and treatment for several years with Midtown." *Id*. at 9. She was taking daily oral doses of Clozaril, a strong anti-psychotic medication, used to treat refractory patients with schizophrenia, who have not responded to anti-psychotics. *Id*. at 10-11.

[4] At some point during the fall of 2017, D.H. decompensated. *Id*. at 11. In November 2017, she stopped going to her appointments at Midtown and stopped taking her medication. *Id*. at 9. She stopped eating and drinking, lost her job, and became homeless. *Id*. at 11-12. Dr. Diez received reports that D.H. was not taking care of herself, and he initiated an emergency detention. *Id*. at 8. When she was hospitalized on November 30, 2017, D.H. was talking

to herself and was "internally preoccupied." *Id*. at 12. She was refusing everything, including medications and was at risk of dying from arrhythmia as a result of not eating or drinking. *Id*. at 12, 14.

[5] A hearing was held on December 6, 2017, and D.H. was ordered to be on a temporary commitment and began receiving treatment. *Appellant's App. Vol. II* at 60-61. D.H. began taking Clozaril again and improved, getting "back on track." *Tr. Vol. II* at 11-12, 13. In February 2018, Dr. Diez wrote a Physician's Statement expressing his opinion that D.H. should be under a regular commitment to "achieve improvement in [D.H.'s] condition." *Appellant's App. Vol. II* at 66-68. Eskenazi Health/Midtown Mental Health CMHC ("Eskenazi") formally requested an extension of the temporary commitment to a regular commitment and attached Dr. Diez's statement. *Id*. at 64-68.

[6] On March 1, 2018, a hearing was held on Eskenazi's request for the regular commitment of D.H. Commissioner Kelly M. Scanlan ("Commissioner Scanlan") presided over the hearing. *Id*. at 11-12. Dr. Diez testified that he believed that D.H. is gravely disabled due to her impaired reasoning and judgment that caused her not to understand the risks of stopping her treatment. *Tr. Vol. II* at 16, 18. Dr. Diez stated that D.H. does not have "the insight [into her illness] to understand the implications of not being in treatment for her schizophrenia or diabetes." *Id*. at 16. Dr. Diez further noted that D.H. is opposed to taking treatment and that she had stated multiple times that she would only continue treatment if she is under commitment. *Id*. at 10, 12-13, 18.

[7] After considering the evidence, Commissioner Scanlan stated:

> [B]ased on all of the evidence, the Court finds that by clear and convincing evidence the respondent does have a mental illness, specifically schizophrenia. And that she is gravely disabled in that she demonstrated a substantial impairment and obvious deterioration in her judgment and behavior that negatively affected her ability to function independently. The Court therefore grants the order of Regular commitment and orders the attending physical [sic] to submit a periodic report no later than March 1st, 2018 and orders that upon obtaining outpatient status, or while on outpatient status, the respondent shall take all medications as prescribed, attend all clinic sessions as scheduled and maintain her address and phone number with the court and the facility.

*Id*. at 28-29. On the same date, Commissioner Scanlan signed the "Order on Extension of a Temporary Commitment to a Regular Commitment," on a signature line titled, "Judge, Steven R. Eichholtz, Marion County Superior Court" ("Judge Eichholtz"). *Appellant's App. Vol. II* at 6-7. Nothing in the record indicated that Commissioner Scanlan was appointed special judge or judge pro tempore in the present matter. The entries in the CCS for March 1, 2018 reflected that the hearing was held, with Commissioner Scanlan presiding, and that: "Court finds by clear and convincing evidence that the Respondent, [D.H.], suffers from a mental illness that is; schizophrenia and is gravely disabled. REGULAR Commitment is GRANTED to Eskenazi Health/Midtown Community Mental Health. Standard outpatient conditions." *Id*. at 11-12. There was also an entry that the "Order Granting Extension of Mental Health Commitment" was signed on March 1, 2018, with

the Judicial Officer listed as Commissioner Scanlan. *Id.* at 12. There were no further entries that reflected that Judge Eichholtz signed the order, and his signature does not appear anywhere on the order. D.H. now appeals.

## Discussion and Decision

[8] D.H. argues that the court's order for regular commitment is defective because it lacks a judge's signature and only contains the signature of Commissioner Scanlan. A magistrate does not have the power of judicial mandate and may not enter a final appealable order unless sitting as a judge pro tempore or a special judge, or in certain other exceptions. Ind. Code § 33-23-5-8.[1] Those exceptions are criminal matters and other matters not relevant to the present appeal. Ind. Code §§ 33-23-5-5; 33-23-5-9. Otherwise, the magistrate shall report findings, but "[t]he court shall enter the order." Ind. Code § 33-23-5-9(a). This case involves an involuntary commitment and not a criminal matter or any of the other exceptions. Therefore, because the order for regular commitment lacks a judge's signature, we agree with D.H. that it is defective. *See In re the Involuntary Commitment of A.M.*, 959 N.E.2d 832, 834 n.1 (Ind. Ct. App. 2011) (finding an order of regular commitment to be defective where it was signed only by a magistrate and not by a judge).

---

[1] Indiana Code section 33-23-5-8 was amended, effective July 1, 2018. This amendment changed the wording of the statute to: "Except as provided under sections 5(14) and 9(b) [Indiana Code section 33-23-5-5(14) and Indiana Code section 33-23-5-9(b)] of this chapter, a magistrate does not have the power of judicial mandate."

[9]    However, defect notwithstanding, we conclude that D.H. has waived any challenge to the validity of the order for regular commitment because she failed to raise an objection to the order at any point prior to appeal. "Our [S]upreme [C]ourt has long held that defects in the authority of a court officer, as opposed to the jurisdiction of the trial court itself, to enter a final order will be waived if not raised through timely objection." *City of Indianapolis v. Hicks,* 932 N.E.2d 227, 231 (Ind. Ct. App. 2010) (citing *Floyd v. State,* 650 N.E.2d 28, 33 (Ind. 1994) (holding "the failure of a defendant to object at the original trial to the jurisdiction of a court officer to enter a final appealable order operates as waiver of the issue both on appeal . . . and on collateral attack . . . .")), *trans. denied.* "[A]ny objection to the authority of an adjudicative officer must be raised at the first instance the irregularity occurs, or at least within such time as the tribunal is able to remedy the defect." *Id.* (citing *Sullivan v. City of Evansville,* 728 N.E.2d 182, 188-90 (Ind. Ct. App. 2000)). In *Hicks,* this court held that a party waived a claim to error for failing to timely object to an order on a motion to correct error signed by a magistrate but not a judge. *Id.* Here, D.H. likewise failed to timely object to the order for regular commitment that was signed by Commissioner Scanlan only. We, therefore, conclude that she has waived the issue for our review.[2]

---

[2] D.H. argues that she had no realistic opportunity to address the defect in the order for regular commitment and could not be presumed to have known that the trial judge would fail to sign the order and give his judicial approval to the findings of Commissioner Scanlan. However, Commissioner Scanlan signed the order for regular commitment and the order was entered in the CCS on March 1, 2018. *Appellant's App. Vol. II* at 12. D.H. filed her notice of appeal on March 26, 2018. *Id.* Therefore, D.H. had at least twenty-five

Affirmed.

Vaidik, C.J., and Riley, J., concur.

---

days between the date the order for regular commitment was signed and the date she filed her notice of appeal where she could have filed an objection to the fact that the order of regular commitment lacked a judge's signature. We, therefore, reject D.H.'s contention that she did not have a realistic opportunity to object to the defect in the order of regular commitment.