**In the Matter of the COMMITMENT OF L.W., Appellant–Respondent,**

**v.**

**MIDTOWN COMMUNITY HEALTH CENTER, Appellee–Petitioner.**

No. 49A02–0409–CV–745.

Court of Appeals of Indiana.

Jan. 31, 2005.

Publication Ordered Feb. 24, 2005.

Ruth Johnson, Indianapolis, IN, Attorney for Appellant.

## OPINION

BAKER, Judge.

Appellant-respondent L.W. appeals his involuntary commitment to Midtown Community Health Center (Health Center), a mental health facility. Specifically, he contends that the evidence was insufficient to support the trial court's finding that he was dangerous or gravely disabled. Finding that Health Center did not carry its burden of proof with respect to the elements of dangerousness and grave disability, we reverse and remand with instructions to vacate the order of involuntary commitment.

### FACTS

On August 5, 2004, the police came to L.W.'s Indianapolis apartment, pulled a gun on L.W., handcuffed him, and brought him to the hospital. Prior to being handcuffed, L.W. "was holding an iron object in this hand." Tr. p. 6. The record does not disclose the reason that the police were dispatched to L.W.'s apartment.

On August 6, 2004, Health Center filed a Petition for Emergency Detention of Mentally Ill and Dangerous Person, alleging that L.W. suffers from a psychiatric disorder that substantially disturbs his thinking, feeling, or behavior, and impairs his ability to function. The petition further alleged that L.W. is a danger to himself or others.

A commitment hearing was held on August 13, 2004. Dr. Sandsrom was the sole witness at L.W.'s commitment hearing. Dr. Sandsrom stated that L.W. is agreeable to taking his medications in the hospital and understands that the medications might help him. Dr. Sandsrom further testified that L.W. has been pleasant and compliant while hospitalized and has not been dangerous to others or to himself.

Dr. Sandsrom also stated that L.W.'s son was caring for him.

The trial court ordered L.W. to regular commitment, stating:

> Based on the evidence and testimony given today and I think the Court will grant a regular commitment but I think what I'll do, I'll grant a periodic report within six months. It is obvious that [L.W.] has been off his med's [sic] for a number of months and needs the monitoring and structure in order to stay on his medication. So, we'll have a periodic report due in six months, which would be the thirteenth of March, right?

Tr. p. 15. In its findings, the trial court specifically found that L.W. suffers from a mental illness, that he is dangerous to himself and to others, that there are no family members who are able to care for him, and that he is gravely disabled because he has no insight into his illness, demonstrates poor judgment, and is unable to provide for his daily needs or to function independently. L.W. now appeals.

### DISCUSSION AND DECISION

In analyzing L.W.'s claim of error, we note that Health Center has failed to file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing an argument for him. *State v. Isaacs,* 794 N.E.2d 1120, 1122 (Ind.Ct.App.2003). Indiana courts apply a less stringent standard of review with respect to showings of reversible error when an appellee fails to file a brief. *Id.* Hence, we may reverse the trial court if an appellant establishes prima facie error. *Id.* Prima facie error is defined as "at first sight, on first appearance, or on the face of it." *Knowles & Assoc. LLC v. Cook,* 784 N.E.2d 1063, 1066 (Ind.Ct.App.2003).

Civil commitment is a significant deprivation of liberty that requires due process protections. *Addington v. Texas*, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). Upon review of an order for involuntary commitment, we will consider only the evidence favorable to the judgment and all reasonable inferences therefrom. *G.P.H. v. Giles*, 578 N.E.2d 729, 733 (Ind.Ct.App.1991). A person may be involuntarily committed if the petitioner proves by clear and convincing evidence that the individual is mentally ill and either dangerous or gravely disabled. Ind. Code § 12-26-2-5(e)(1). For purposes of Indiana Code article 12-26, "gravely disabled" means:

A condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:

(1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or

(2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind.Code § 12-7-2-96. "Dangerous" is defined as "a condition for which an individual, as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." I.C. § 12-7-2-53.

Here, the trial court found L.W. to be gravely disabled because he had no insight into his illness and demonstrated poor judgment. However, Dr. Sandsrom testified that, "He has complied with his medication so then I guess he might have some insight, he understands it might help him." Tr. p. 8. When asked if he considered L.W.

greatly disabled, Dr. Sandsrom replied, "I understand he is living—he is living at this [sic] own apartment. So, that indicates that he is not greatly disabled from that grounds...." Tr. p. 9. When asked whether L.W. suffers from impaired judgment, Dr. Sandsrom was unable to answer the question. Thus, the evidence demonstrates that L.W. had insight into his illness and was able to provide for his needs. Moreover, there was no evidence that L.W. demonstrated poor judgment. As such, the evidence most favorable to the judgment does not support the trial court's conclusion that L.W. was gravely disabled.

Furthermore, there is no indication in the record that L.W. was dangerous to himself or to others. The only possible indication that L.W. was dangerous was that he was holding an iron object when the police came to his door. Tr. p. 6. The record does not tell us what the object was, nor does it state that L.W. threatened the officers in any way. Moreover, Dr. Sandsrom testified that L.W. has been pleasant and compliant while at the hospital and that he has not been dangerous to others or to himself. Tr. p. 9. This dearth of evidence fails to support the trial court's finding that L.W. was dangerous.[1] Inasmuch as the statute requires the respondent to be either dangerous or gravely disabled, the involuntary commitment order cannot stand.

The judgment of the trial court is reversed and remanded with instructions to vacate the order of involuntary commitment.

SHARPNACK, J. and FRIEDLANDER, J., concur.

---

1. We suspect that there is a greater knowledge on the part of the parties and the trial court of L.W.'s history of mental illness than may be found in the transcript of this hearing. Be that as it may, none of their prior knowledge was expressed on this record. As such, we agree with L.W. that the evidence was insufficient to support his commitment.

*ORDER*

The Court having heretofore handed down its opinion in this appeal on January 31, 2005, marked Memorandum Decision, Not for Publication.

The Appellant, by counsel, has now filed a Verified Motion for Publication, alleging therein that because the decision provides a sound discussion of the proof necessary for involuntary commitment, the public, the trial courts and the medical community will benefit from having this decision published and prays that this Court order the publication of this decision.

The Court having reviewed its opinion, having considered the Appellant's Motion for Publication, and being duly advised, now finds that the same should be granted.

IT IS THEREFORE ORDERED that the Appellant's Verified Motion for Publication is GRANTED, and this Court's opinion heretofore handed down in this cause on January 31, 2005, marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.