# FOR PUBLICATION



**FILED**
May 23 2014, 10:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICIA CARESS McMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JENNY R. BUCHHEIT**
**STEPHEN E. REYNOLDS**
Ice Miller LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE CIVIL )
COMMITMENT OF C.P., )
)
C.P., )
)
    Appellant-Respondent, )
)
    vs. )    No. 49A02-1309-MH-770
)
COMMUNITY HOSPITAL NORTH/ )
GALLAHUE MENTAL HEALTH, )
)
    Appellee-Petitioner. )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald Zore, Judge
Cause No. 49D08-1308-MH-29426

**May 23, 2014**

**OPINION - FOR PUBLICATION**

**MAY, Judge**

C.P. appeals her 90-day involuntary commitment to Community North Hospital ("the Hospital").[1] She acknowledges she is mentally ill but asserts the hospital did not prove she was gravely disabled or dangerous to herself. Because a psychiatrist's testimony provided clear and convincing evidence that C.P. was gravely disabled, we affirm.

## FACTS AND PROCEDURAL HISTORY

C.P. brought herself to the emergency room at the Hospital on August 18, 2013, claiming that she had been bitten by spiders in her home and that the "venom" left her "feeling heavily sedated, or drugged." (Tr. at 17.) The doctors who examined her could not find any spider bites and referred her to psychiatry for an evaluation. The psychiatrist admitted her to the Behavioral Health Pavilion on an emergency detention.

This was the fourth time in thirty-one days that C.P. had arrived at the emergency room claiming she had been bitten by poisonous spiders in her home. On one of those occasions, police visited her home and could not find any spiders. On all four occasions, doctors were unable to find any spider bites on C.P. Nevertheless, C.P. did not believe she has a mental illness, and she believes the evaluations by the emergency room doctors are incorrect.

At a hearing on August 23, a psychiatrist who had seen C.P. each morning for five days testified about her condition. C.P. does not believe she has delusions. She believes

---

[1] Although C.P.'s 90-day involuntary commitment has already ended, making her appeal moot, we address her appeal on its merits because "it involves questions of great public interest . . . that are likely to recur." *See Commitment of S.T. v. Community Hosp. North*, 930 N.E.2d 684, 687 (Ind. Ct. App. 2010) (addressing S.T.'s argument on its merits because involuntary commitment is a question of great public interest that is likely to recur), *reh'g denied*.

there are spiders at her house that bite her when she is there.  Because of her fear of the

spiders, she has been living outside of her apartment.  The psychiatrist further explained:

Q      Now, is she able to provide herself with food, clothing, and shelter, and other essential human needs?
A      No.
Q      And, what needs is she unable to meet?
A      She's unable to live in a house.  She's unable to cook and eat in the house.  She lost her job.  She couldn't go to her [examinations], uh, for the Ivy Tech related to the anxiety that comes from these thoughts.  Uh, and she's currently not working.  . . . and uh, essentially she feels that she don't [sic] have a place to live.
Q      Okay.  And, do you – in your opinion is she unable to meet these needs because of her mental illness?
A      Yes.
Q      Now, does she suffer also from a substantial impairment, or deterioration of her judgment, reasoning, or behavior?
A      Yes.
Q      And, does it – impairment effect [sic] her ability to function independently?
A      Yes.
Q      And, does her illness also effect [sic] her ability to take medication?
A      Yes.
Q      How so?
A      Because, um, the person does not believe that they [sic] have the illness?
Q      Now, was she prescribed medication in her previous admissions?
A      Yes.
Q      And –
A      Uh, she had taken one – one dose of Risperdal.  I verified with the pharmacy on August 1st.  She was discharged on Risperdal, with an appointment with outpatient provider, and she went there, and reported that she does not need any services.
Q      So, based on your examinations then, is [C.P.] gravely disabled?
A      Yes.
Q      And, this is – again, based on her mental illness?
A      Yes.
Q      Now, also based on your examinations do you have an opinion whether she presents a substantial risk of harming herself?
A      She has not indicated to me that she has any thoughts to hurt herself, but based on her delusional thinking, she may engage in dangerous

3

> behavior, which can potentially put her at risk like the thoughts of burning the house, or may have burned the house, living outside in the car. Um, thoughts about ending it all, like to a point that she cannot take the anxiety that comes with these thinking [sic], and doing some dangerous behavior.
>
> Q And, is this behavior also a part of her mental illness?
> A Yes.

(*Id*. at 8-10.) Based thereon, the psychiatrist asked for a 90-day commitment to stabilize C.P. on anti-psychotic medications; however, he believed C.P. could be released from inpatient treatment after ten to fourteen days, at which point she could be treated on an outpatient basis.

> At the end of the hearing, the court found:
>
> On the evidence presented the Court finds by clear and convincing evidence, Respondent is suffering from Psychosis Not Otherwise Specified, which is a mental illness as defined in Indiana Code 12-7-2-130. That the Respondent may be dangerous to herself or others as defined in Indiana Code 12-7-2-53. That Respondent is gravely disabled as defined in Indiana Code 12-7-2-96. That the respondent is in need of custody, care and treatment at Community Hospital North, or Gallahue Mental Health Services for a period of time not expected to exceed ninety (90) days.

(*Id*. at 34.)

## DISCUSSION AND DECISION

Involuntary commitment proceedings are subject to federal due process requirements because the "loss of liberty produced by an involuntary commitment is more than a loss of freedom resulting from the confinement." *Commitment of S.T. v. Community Hosp. North*, 930 N.E.2d 684, 687 (Ind. Ct. App. 2010), *reh'g denied*. "As everyone exhibits some abnormal conduct at one time or another, 'loss of liberty calls for a showing that the

4

individual suffers from something more serious than is demonstrated by idiosyncratic behavior.'" *Id*. (quoting *Addington v. Texas*, 441 U.S. 418, 427 (1979)).

When we review the sufficiency of the evidence to support a civil commitment, we look to the evidence and reasonable inferences therefrom favorable to the trial court's decision. *G.Q. v. Branam*, 917 N.E.2d 703, 707 (Ind. Ct. App. 2009). We will not reweigh the evidence or judge witness credibility. *Id*. If the trial court's decision was one a reasonable person could have made, we will affirm even if other reasonable decisions were possible. *Id.*

To have a person involuntarily committed, a petitioner must demonstrate "by clear and convincing evidence that: (1) the individual is mentally ill and either dangerous or gravely disabled; and (2) detention or commitment of that individual is appropriate." Ind. Code § 12-26-2-5(e). In this context, mental illness means "a psychiatric disorder that: (A) substantially disturbs an individual's thinking feeling or behavior; and (B) impairs the individual's ability to function." Ind. Code § 12-7-2-130(1). The trial court found C.P. was diagnosed with "Psychosis Not Otherwise Specified, which is a mental illness as defined in Indiana Code 12-7-2-130." (Tr. at 34.) C.P. does not challenge that finding on appeal.

Instead, she challenges the court's finding that she "is gravely disabled as defined in Ind. Code 12-7-2-96."[2] (Tr. at 34.) A person is gravely disabled if

an individual, as a result of mental illness, is in danger of coming to harm

---

[2] Pursuant to Ind. Code § 12-26-2-5(e), the Hospital needed to prove that C.P. was "either dangerous or gravely disabled." A petitioner need not prove a person is both dangerous and gravely disabled. *G.Q.*, 917 N.E.2d at 707. As the evidence supports the finding C.P. was gravely disabled, we need not address whether she was dangerous. *See id*.

because the individual: (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or (2) has substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96.

C.P. asserts that, although she did not accept her diagnosis or the recommended treatment, "there are no underlying facts that show C.P. has a substantial impairment in judgment that results in her being [un]able to function independently." (Appellant's Reply Br. at 4.) However, the psychiatrist testified C.P.'s mental illness prevented her from meeting her needs: "She's unable to live in a house. She's unable to cook and eat in the house. She lost her job. She couldn't go to her [examinations]." (Tr. at 8.) C.P. had arrived at the hospital four times within one month seeking treatment for neurological effects of non-existent spider bites. The psychiatrist testified that C.P.'s unwillingness to take medications to treat her mental illness, which she does not admit she has, substantially impairs her ability to function independently. Therefore, the psychiatrist believed a commitment was required to stabilize C.P. on antipsychotic medications, so she could understand her illness and perhaps comply with ongoing outpatient treatment. We may not reweigh the evidence and, thus, we cannot hold the court erred when it determined clear and convincing evidence demonstrated C.P.'s mental illness left her gravely disabled. *See*, *e.g.*, *In re Involuntary Commitment of A.M.*, 959 N.E.2d 832, 836 (Ind. Ct. App. 2011) (grave disability found based on non-compliance with medication regimen, lack of insight into illness, poor prognosis without medications, delusions, agitation and trouble sleeping).

6

Having rejected C.P.'s arguments, we affirm the court's involuntary commitment order.

Affirmed.

KIRSCH, J., and BAILEY, J., concur.