## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 25 2015, 9:25 am

*Kevin S. Smith*

**CLERK**
of the supreme court, court of appeals and tax court

ATTORNEYS FOR APPELLANT

Steven E. Ripstra
Jacob P. Wahl
Ripstra Law Office
Jasper, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Commitment of Z.P., <br><br> Z.P., <br><br> *Appellant-Respondent,* <br><br>       v. <br><br> Memorial Hospital, <br><br> *Appellee-Petitioner.* | March 25, 2015 <br><br> Court of Appeals Case No. 19A04-1410-MH-500 <br><br> Appeal from the Dubois Circuit Court. <br> The Honorable William E. Weikert, Judge. <br> Cause No. 19C01-1409-MH-155 |

**Barteau, Senior Judge**

## Statement of the Case

[1] Z.P. appeals from the trial court's judgment, which directed that he must be involuntarily committed for outpatient mental health treatment. We affirm.

# Issue

Z.P. argues that there is insufficient evidence to sustain the trial court's judgment. The dispositive issue is whether Z.P. invited error, but we also consider whether there is sufficient evidence to support the judgment.

# Facts and Procedural History

Z.P. is a veteran and served our country in Iraq in 2007. He received mental health services through the Veterans' Health Administration (VA) after returning home.

In September and December 2011, Z.P. was detained at Memorial Hospital in Jasper, Indiana, for mental health issues. Each time, he was detained for several days. Next, he was detained at Memorial Hospital for mental health issues twice in May 2014: from May 13 through May 15, and May 17 through May 21. Dr. Robert White, a psychiatrist at Memorial Hospital, treated Z.P. at that time. Dr. White was "very concerned" about Z.P.'s poor prognosis, which posed a "risk to not only [Z.P.] but the police force." Tr. p. 6. Dr. White was also concerned about Z.P.'s noncompliance with treatment. Dr. White told Z.P. that if he came back to Memorial Hospital and was not complying with treatment, Dr. White would seek to have him involuntarily committed for further treatment. Dr. White concluded that Z.P. needed more intensive services and discussed Z.P.'s case with the VA.

Z.P. continued to receive treatment from the VA. The VA "flagged him as high risk," indicating he was to see a therapist on a weekly basis. *Id.* at 3. His

therapist went on maternity leave in July 2014, and Z.P. refused to see other therapists. Furthermore, prior to going on leave, Z.P.'s therapist reported that Z.P. had only partially complied with recommendations and was "minimally engaged in treatment." *Id.*

[6] In the fall of 2014, Z.P. applied for a treatment program through the VA, but he failed to appear for three interviews and was deemed to be unsuitable for the program. In addition, the VA offered Z.P. intensive outpatient programs or partial hospitalization, and he rejected those options.

[7] On September 11, 2014, police officers brought Z.P. to Memorial Hospital. Z.P. had expressed thoughts of suicide, and when officers arrived at his location, he brandished knives with the intent to commit "suicide by cop." *Id.* Z.P. dropped the knives and surrendered only after an officer threatened to use a Taser. Later that same day, a Memorial Hospital employee contacted the trial court and requested an emergency detention order for Z.P. The court granted the hospital's request.

[8] Next, a Memorial Hospital employee asked the trial court to order a longer commitment for Z.P. The court scheduled an evidentiary hearing and appointed counsel to represent Z.P.

[9] During Z.P.'s hospitalization, Dr. White diagnosed him with "alcohol use disorder, antisocial personality disorder, unspecified depressive disorder, and probable PTSD." *Id.* at 2. These diagnoses were "essentially the same as what had been there" during Z.P.'s prior hospitalizations at Memorial Hospital. *Id.*

[10]     The court held an evidentiary hearing on September 25, 2014.  Dr. White

testified that in his opinion, Z.P. was "dangerous to self and others."  *Id.* at 2.

Z.P. did not dispute that he needed additional treatment, testifying as follows:

> With regards to the treatment from the VA, I 100% agree that I
> do need treatment.  I know I need to get better and I am willing
> to go to the VA and see a therapist while my current therapist is
> on maternity leave.  I'm willing to do that.  I know I need to get
> better and I need to get fixed and I need to take my medicine.

*Id.* at 4.

[11]     Z.P. further stated, "I will abstain from alcohol.  I'm going to have to with my

legal issue.  I will take random drug screens.  I will do all that, but I want to see

the VA instead of Southern Hills."  *Id.* at 5.  He agreed that he needed help

"with the PTSD."  *Id.*  Finally, Z.P. told the court:

> [I]npatient care is probably the best option for me right now, and
> I was made aware that Heather had discussed a facility in
> Marion, Indiana.  And they are looking into that as an option for
> me.  The VA.  I'll have to wait for what they have to say.

*Id.*

[12]     After hearing the evidence, the court determined:

> I'm going to find that there is sufficient proof for regular
> commitment, finding that [Z.P.] is suffering from illnesses
> described by Dr. White, that he has been dangerous to himself
> and others[,] that the best facility where he can receive treatment
> and care at this point is Southern Hills which is the least
> restrictive environment suitable for the necessary care, treatment
> and protection of [Z.P.]  And the conditions are they [sic] will
> hopefully provide the right treatment for you and allow you to be

in an environment where you can succeed rather than keep coming back to the hospital as you have been in the past.

*Id.* at 6.

[13] The court rejected Z.P.'s request for services through the VA rather than Southern Hills, stating "that's not working" and "I don't see anything that the VA has to offer that is going to make it any different than it has been." *Id.* at 6-7. The court noted that Southern Hills provided only outpatient services, but if Southern Hills' staff determined that an inpatient VA program would help Z.P., the court would not object. This appeal followed.

## Discussion and Decision

[14] Z.P. argues that there is insufficient evidence to support the trial court's decision that he is in need of an involuntary commitment for medical care. Memorial Hospital, the health care provider that sought Z.P.'s involuntary commitment, has not filed an Appellee's Brief. When the appellee fails to submit a brief, we will not undertake the burden of developing an argument on its behalf. *Geico Ins. Co. v. Graham*, 14 N.E.3d 854, 857 (Ind. Ct. App. 2014). Instead, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. *Id.* In this context, prima facie error is defined as at first sight, on first appearance, or on the face of it. *Id.* Even under the prima facie error rule, we are obligated to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id.* If the appellant is unable to meet the burden of establishing prima facie error, we will affirm. *Id.*

[15] Before addressing the merits of Z.P.'s claim of insufficient evidence, we conclude that he invited any error. The doctrine of invited error, which is grounded in principles of estoppel, states that a party may not take advantage of an error that he or she commits, invites, or which is the natural consequence of his or her own neglect or misconduct. *Witte v. Mundy*, 820 N.E.2d 128, 133 (Ind. 2005).

[16] During the evidentiary hearing in this case, Z.P. conceded that he "need[ed] treatment." Tr. p. 4. He agreed that he "need[ed] help with the PTSD." *Id.* at 5. Z.P. further expressed a willingness to see a therapist or participate in an inpatient treatment program. He disagreed with the proposal to receive treatment through Southern Hills, arguing that he would prefer to get treatment from "the VA instead of Southern Hills," but he did not dispute the need for some form of court-ordered treatment.[1] *Id.* Having conceded that he is mentally ill and having agreed to receive court-ordered treatment, Z.P. invited any error arising from an alleged lack of evidence to support the trial court's determination that a commitment for mental health treatment was appropriate. *See Beeching v. Levee*, 764 N.E.2d 669, 674 (Ind. Ct. App. 2002) (appellant invited any error arising from the admission of evidence because he asked the trial court to admit the evidence).

---

[1] Z.P. does not claim on appeal that the trial court erred by committing him to the care of Southern Hills rather than the VA.

[17] Waiver notwithstanding, we address Z.P.'s claim. An individual who is shown to be mentally ill and either dangerous or gravely disabled may be involuntarily detained or committed for different periods of time specified by statute, including as an immediate detention, an emergency detention, a temporary commitment, or a regular commitment. Ind. Code § 12-26-1-1 (1992). This case concerns a regular commitment, the most extensive form of commitment. A regular commitment is a commitment that is "reasonably expected to require custody, care, or treatment in a facility for more than ninety (90) days." Ind. Code § 12-26-7-1 (1992). It applies to individuals who appear to be suffering from chronic mental illnesses. Ind. Code § 12-26-7-2 (2004).

[18] Upon receiving a petition or a report requesting involuntary treatment of an individual for more than ninety days, the trial court must schedule a hearing. Ind. Code § 12-26-7-4 (1992). A petitioner seeking an involuntary, regular commitment must prove at the hearing "by clear and convincing evidence" that the individual is mentally ill and either dangerous or gravely disabled, and that commitment of the individual is appropriate. Ind. Code § 12-26-2-5 (2007). If, at the completion of the hearing and upon consideration of the record, a trial court determines that an individual is mentally ill and either dangerous or gravely disabled, the court may enter an order:

> (1) For the individual's custody, care, or treatment, or continued custody, care, or treatment in an appropriate facility.
> (2) For the individual to enter an outpatient therapy program under IC 12-26-14.

Ind. Code § 12-26-7-5 (2009).

[19]     When reviewing a challenge to the sufficiency of the evidence with respect to commitment proceedings, we look to the evidence most favorable to the trial court's decision and draw all reasonable inferences from that decision. *Commitment of M.M. v. Clarian Health Partners*, 826 N.E.2d 90, 96 (Ind. Ct. App. 2005), *trans. denied*. We may not reweigh the evidence or judge the credibility of witnesses. *In re Involuntary Commitment of A.M.*, 959 N.E.2d 832, 835 (Ind. Ct. App. 2011). If the trial court's decision represents a conclusion that a reasonable person could have drawn, we will affirm even if other reasonable conclusions are possible. *G.Q. v. Branam*, 917 N.E.2d 703, 707 (Ind. Ct. App. 2009).

[20]     Z.P. does not dispute the trial court's determination that he is mentally ill. Instead, Z.P. claims there is insufficient evidence to support the trial court's determination that he is "dangerous to himself and others." Tr. p. 6.

[21]     For the purpose of an involuntary civil commitment, "dangerous" is defined as "a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." Ind. Code § 12-7-2-53 (1992). We consider three factors in determining whether the evidence supports the involuntary commitment: the gravity of the behavior leading to the hospital admission, behavior in the hospital, and the relationship between problematic behaviors and the person's mental illness. *In re Commitment of T.K.*, 993 N.E.2d 245, 248 (Ind. Ct. App. 2013), *trans. denied*.

[22] In this case, Z.P.'s behavior prior to his hospital admission strongly supports the trial court's decision. He threatened police officers with knives in an attempt to provoke the officers to kill him. He thus endangered himself and the officers. Dr. White had expressed concerns about Z.P.'s safety in May 2014. In addition, despite repeated hospitalizations for mental health treatment, Z.P. did not cooperate with his treatment providers prior to the detention at issue here. His VA therapist reported that he was noncompliant and disengaged from treatment. After she went on maternity leave, Z.P. refused to see a different therapist, resulting in him failing to participate in therapy from July 2014 until his detention in September 2014. He also rejected the VA's recommendations for intense outpatient or partial hospitalization programs.

[23] The record also reflects a strong relationship between Z.P.'s mental illnesses and his dangerous behavior. Z.P. concedes that his "behavior would not have occurred but for his mental illness." Appellant's Br. p. 8. In addition, Dr. White treated Z.P. at Memorial Hospital in May 2014, and he was concerned at that time that Z.P.'s "poor prognosis" would put Z.P. and police officers at risk. Tr. p. 6. Dr. White further stated that Z.P. had failed to follow through on the "many types of treatment" that had been offered to him and had warned Z.P. in May 2014 that further failure to comply with treatment would cause Memorial Hospital to seek a regular commitment. *Id.* The VA had classified Z.P. as "high risk," and as a result Z.P. was required to appear for weekly counseling sessions. *Id.* at 3.

[24]     This evidence is sufficient to establish a prima facie case of dangerousness, which is the basis for the trial court's order of involuntary regular commitment. *See Commitment of S.T. v. Cmty. Hosp. North*, 930 N.E.2d 684, 692 (Ind. Ct. App. 2010) (evidence sufficient to establish dangerousness where patient was hospitalized after attempting suicide, and her destructive behavior was caused or exacerbated by her mental illness).

[25]     Z.P. notes that the record is silent as to whether he behaved well at Memorial Hospital following his detention.  Lack of disruptive behavior while hospitalized is a valid consideration, but more troubling is Z.P.'s history of repeated, short-term hospitalizations, which did not cause Z.P. to correct his behavior or to comply with treatment recommendations after the hospitalizations ended.

[26]     Z.P. cites to *In the Matter of the Commitment of L.W. v. Midtown Community Health Center*, 823 N.E.2d 702 (Ind. Ct. App. 2005), in support of his appeal, but that case is distinguishable.  There, police brought L.W. to a hospital because he was found holding an "iron object" when they came to his apartment.  *Id.* at 704.  No other facts were provided about that encounter, and a panel of this Court deemed the evidence insufficient to support the order of commitment.  *Id.* By contrast, in this case the record demonstrates that the police confronted Z.P. because he had made references to suicide, and when they arrived he threatened them with knives in an attempt to provoke them into killing him.  This case presents more specific evidence of dangerousness.  Also, in L.W.'s case the evidence showed that he had cooperated with his treatment providers.  By

contrast, the record in this case reflects that Z.P. largely failed to cooperate with the VA's treatment plans, even after Dr. White advised him that further noncompliance coupled with misbehavior could result in Memorial Hospital seeking an involuntary regular commitment. Z.P. has failed to establish prima facie error.

## Conclusion

Z.P. invited any error with respect to the sufficiency of the evidence supporting his involuntary regular commitment. In any event, the evidence is sufficient to support the trial court's judgment. For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

Vaidik, C.J., and Barnes, J., concur.