## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 19 2015, 7:58 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Karen Wrenbeck
Monroe County Public Defender
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

James L. Whitlatch
Kathryn DeWeese
Bunger & Robertson
Bloomington, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

In the Matter of the Commitment of A.A.,

*Appellant-Respondent,*

v.

Indiana University Health Bloomington Hospital,

*Appellee-Petitioner*

May 19, 2015

Court of Appeals Case No. 53A01-1412-MH-530

Appeal from the Monroe Circuit Court.
The Honorable Stephen R. Galvin, Judge.
Cause No. 53C07-1410-MH-362

**Baker, Judge.**

[1] A.A. appeals the order of the trial court finding that she is gravely disabled and ordering that she be committed to a psychiatric care facility. Finding that the trial court's order is supported by clear and convincing evidence, we affirm.

## Facts

[2] On October 30, 2014, A.A. was found wandering the streets of Bloomington in a confused state. A.A. was examined by Katherine Esarey, a therapist at Centerstone Behavioral Health Center (Centerstone). Esarey filed an application for emergency detention stating that A.A. appeared "psychotic and disorganized." Appellant's App. p. 5. Esarey further stated that if A.A. was not restrained immediately she would "continue to be at risk of harm to herself due to her mental health challenges and current homelessness." *Id.* The trial court granted the application that same day and ordered A.A. committed to IU Health Bloomington Hospital for seventy-two hours. *Id.* at 8.

[3] On November 5, 2014, Dr. Carey Mayer, who had examined A.A., filed a report in the trial court alleging that A.A. was suffering from a psychiatric disorder and was in need of custody, care, and treatment at an appropriate facility. Dr. Mayer was familiar with A.A. from her prior hospitalizations. He noted that A.A. had a long history of paranoid schizophrenia and could not be relied upon to take her medication regularly.

[4] On November 7, 2014, the trial court held a hearing at which Dr. Mayer testified. Dr. Mayer reiterated the information contained in his November 5 report and recommended that A.A. be committed to a psychiatric care facility

for one year given the "chronicity of her problems." Tr. p. 7. Later that day, the trial court issued an order finding that A.A. was gravely disabled and ordering her involuntary regular commitment[1] to an appropriate facility—Centerstone[2]—"until [she] is discharged or until the Court terminates the commitment." Appellant's App. p. 19. The trial court ordered the head of Centerstone to submit a report regarding A.A.'s condition no later than November 7, 2015. A.A. now appeals.

## Discussion and Decision

[5] Civil commitment proceedings serve to protect the public and to "ensure the rights of the person whose liberty is at stake." *Civil Commitment of T.K.*, 27 N.E.3d at 273. Due process requires that the facts justifying an involuntary commitment be shown by clear and convincing evidence. *Id.* In determining whether such a showing has been made, we will affirm if, "considering only the probative evidence and the reasonable inferences supporting it, without weighing evidence or assessing witness credibility, a reasonable trier of fact could find the necessary elements proven by clear and convincing evidence." *Id.* (quotations omitted).

---

[1] A "regular commitment" is a commitment for an indefinite period of time and is governed by Indiana Code chapter 12-26-7. *Civil Commitment of T.K. v. Dep't of Veterans Affairs*, 27 N.E.3d 271 n.1 (Ind. 2015).

[2] Although the order specified that A.A. would be committed to IU Health Bloomington Hospital, during the hearing, the trial court believed that A.A. would be committed to Centerstone and the record shows that A.A. was transferred from Bloomington Hospital to Centerstone on November 13, 2014. Tr. p. 19; Appellant's App. p. 22.

[6]     Indiana Code section 12-26-7-5 provides:

> (a)     If at the completion of the hearing and the consideration of the record an individual is found to be mentally ill and either dangerous or gravely disabled, the court may enter either of the following orders:
>
>> (1)     For the individual's custody, care, or treatment, or continued custody, care, or treatment in an appropriate facility.
>>
>> (2)     For the individual to enter an outpatient therapy program under IC 12-26-14.

Here, the trial court found A.A. to be "gravely disabled" and ordered her committed to Centerstone for continued custody, care, and treatment. Appellant's App. p. 19-20.

[7]     An individual is "gravely disabled" for involuntary commitment purposes if that individual,

> . . . as a result of mental illness, is in danger of coming to harm because the individual:
>
>> (1)     is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>>
>> (2)     has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

Ind. Code § 12-7-2-96.  A.A. argues that she cannot be considered "gravely disabled" under either prong of this analysis.

[8]     A.A. first argues that she is able to provide for her food, clothing, shelter, and other essential needs.  As to shelter, A.A. argues that she can stay at her

mother's residence.[3] Appellant's Br. p. 9. Furthermore, A.A. points out that there is no evidence in the record that she was malnourished when she arrived at the hospital and, therefore, no evidence that she is incapable of providing food for herself. *Id.*

[9]     However, A.A.'s assertion that she can go to her mother's residence is belied by the fact that, when she was found, she was wandering the streets. Dr. Mayer testified that A.A. had spoken about having an altercation with her mother and indicated that she was choosing not to return to her mother's. Tr. p. 13. Furthermore, there is no evidence in the record indicating either the location or condition of mother's residence.

[10]    Similarly, there is no evidence in the record indicating that A.A.'s mother is capable of providing for A.A.'s essential needs. In fact, the only evidence as to this issue indicates that A.A.'s mother is incapable of providing for her, as A.A. testified that she and her mother had recently been at the park asking people for money. *Id.* at 16. There is also no evidence indicating that A.A. is capable of finding employment. Dr. Mayer's testimony as to her current mental state is evidence to the contrary. *Id.* at 6.

[11]    Finally, while A.A. was not malnourished when she arrived, viewing her situation in light of the totality of the evidence available to the trial court, this

---

[3] A.A. is apparently also married, but the record indicates that she does not know where her husband is. Tr. p. 15-16.

fact does not necessarily indicate that she will be able to provide herself with sufficient food over the long term. Consequently, we believe that, while there may be some evidence that A.A. is able to find shelter, there was clear and convincing evidence in the record from which the trial court could conclude that A.A. was incapable of providing for herself in other essential ways. *See T.A. v. Wishard Health Serv.*, 950 N.E.2d 1266, 1271 (Ind. Ct. App. 2011) (affirming commitment order where T.A. was unable to explain how she would meet her basic needs and her view of her ability to care for herself was unrealistic).

[12] Moreover, this evidence also indicates that A.A. has substantial impairment in her judgment, reasoning, or behavior that leaves her unable to function independently. Dr. Mayer testified that he is very familiar with A.A. because "between the years of about 2003 to 2007," A.A. was hospitalized about two times a year because she was showing symptoms of paranoid schizophrenia. *Id.* at 5. When Dr. Mayer examined her on this occasion, A.A. "was under the distinct impression that there were people trying to murder her, that the police were trying to murder her." *Id.* at 6.

[13] In addition to this, Dr. Mayer testified that it is unlikely that A.A. is able or willing to attend to her mental health on her own. Dr. Mayer noted that A.A. is "becoming quite evasive about describing what her symptoms are." *Id.* He also noted that most of A.A.'s prior hospitalizations had come as a result of her ceasing to take her prescribed medication and that her problems were further compounded by her use of non-prescribed drugs. *Id.* at 8.

[14] A.A. analogizes her case to *L.W. v. Midtown Community Health Center*, 823 N.E.2d 702 (Ind. Ct. App. 2005). In that case, this Court found the evidence insufficient to support the conclusion that L.W. was gravely disabled in part because L.W. had complied with his medication regimen. *Id.* at 704. However, such is not the case here. Instead, the evidence indicates that A.A. has been non-compliant in the past and that she currently expresses an unwillingness to take certain medications if prescribed as well as an unwillingness to receive any injections. Tr. p. 17-18. Dr. Mayer testified that A.A.'s illness is such that it may be necessary for her to occasionally receive injections. *Id.* at 10-11. As such, A.A.'s reliance on *L.W.* is misplaced.

[15] The evidence indicates that A.A. suffers from a serious mental disorder which requires determined and persistent attention. The evidence also suggests that A.A. is either incapable of or unwilling to attend to her illness by regularly taking her prescribed medications. We believe that this amounts to clear and convincing evidence that A.A.'s judgment, reasoning, or behavior is impaired to the extent that she is not able to function independently. *See In re Commitment of C.P.*, 10 N.E.3d 1023, 1027 (Ind. Ct. App. 2014) (affirming commitment order where C.P. showed an unwillingness to take her medication), *trans. denied*. Consequently, we believe the trial court's finding that A.A. is gravely disabled is supported by clear and convincing evidence.

[16] The judgment of the trial court is affirmed.

Friedlander, J., and Mathias, J., concur.